I respectfully dissent from the opinion of the majority in this matter concerning whether the plaintiff's employment as a firefighter placed him in a position of greater risk than the general public of contracting carpal tunnel syndrome and, thus, caused him to develop the compensable occupational disease of carpal tunnel syndrome. The majority gave greater weight to the opinions of Drs. Poehling, Koman, and Noah on the issue of causation; however, the undersigned would have given greater weight to the testimony of Dr. Furr.
Dr. Furr not only evaluated the plaintiff, but also performed carpal tunnel release surgery on the plaintiff's right hand on June 20, 2000. As a treating physician, it is Dr. Furr's opinion that the plaintiff's bilateral carpel tunnel syndrome is causally related to the plaintiff's employment as a firefighter. Further, Dr. Furr is of the opinion that the plaintiff's job as a firefighter placed him at an increased risk of contracting bilateral carpal tunnel syndrome as compared to members of the general public. Upon reviewing the plaintiff's job duties, Dr. Furr explained at his deposition that, even though the plaintiff's job duties were not commonly repetitive, the fact that the duties are performed in emergency situations would place the plaintiff at an increased risk of using the type of exertive force that would cause carpal tunnel syndrome. Dr. Furr stated at deposition:
 [I]n someone who does an activity, such as maybe pulling a heavy hose, or doing those heavy wrenches, although it may not seem to an individual [that] he just pulled that wrench one time, it didn't seem that bad. But when you're doing it in an `urgent' situation, and you're trying *Page 12 
to do that in extreme exertion, you're more likely to press on the muscles and hyper extend the wrist, to put pressure directly on the carpal tunnel from the actual wrench itself.
Dr. Furr also addressed the issue of the plaintiff's weight lifting activities in relation to the plaintiff's need to stay physically fit to perform his requisite job duties. Dr. Furr was of the opinion that the plaintiff's weight lifting may have caused or aggravated the plaintiff's bilateral carpal tunnel syndrome. Dr. Furr stated at deposition:
 If he's doing something repetitive. If he's doing things with the upper extremities particularly; like with wrist curls and bicep curls, those four exercises in particular could do it. I think that the gripping you have, for example, with bench press and lat machines, lat exercises, could also do it. I mean, I think they would be additive . . . I think any time when you do some type of gripping or doing that, it can aggravate, especially in this particular case when he's know to have had it before, and he's exacerbating that preexisting problem.
Based on the testimony of Dr. Furr, the undersigned finds that the majority erred in failing to find that the plaintiff's employment as a firefighter placed him in a position of greater risk than the general public of contracting carpal tunnel syndrome and, thus, caused him to develop the compensable occupational disease of carpal tunnel syndrome. For these reasons, I respectfully dissent.
S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1